FISH BROS. WAGON CO. v. FISH BROS. MFG. CO.

(Circuit Court, N. D. Iowa. April 20, 1898.)

1. Use of Trade-Mark and Trade-Name by Two—Assignability of Right.

In a suit between the originator of a manufacturing business and the purchaser thereof, it was decided that the right to the trade-mark and trade-name used in connection therewith was not exclusive in either party, but that each had a right to the limited use thereof. *Held*, that such right was assignable.

2. Same—Claims of Genuineness—Rights Fixed by Court.

Where the court has decided that each of the parties to a suit is entitled to manufacture an article, and use the same name and trade-mark to designate it, it is not open to either to give out or claim that he manufactures the only genuine article of that name; but neither can be restrained from using the trade-mark or trade-name, at the suit of the other.

This was a suit in equity brought by the Fish Bros. Wagon Company, of Racine, Wis., against the Fish Bros. Manufacturing Company, of Clinton, Iowa, to restrain defendant from the use of the trade-mark and trade-name claimed by complainant.

Quarles, Spence & Quarles and Preston & Moffitt, for complainant.
W. J. Turner and Chase & Seaman, for defendant.

SHIRAS, District Judge. From the evidence submitted in this case, it appears that in 1863 Fish & Bull began the manufacture of wagons at Racine, Wis.; and about a year later Bull retired from the firm, and Abner C. Fish became interested in the business with his brother Titus G., the firm name being changed to Fish Bros. In 1868 John C. Huggins and E. B. Fish were admitted as partners, and the firm name was changed to Fish Bros. & Co. Shortly after this time the firm became embarrassed financially, and an arrangement was made with Jerome I. Case, under which the latter advanced a large amount of money in aid of the business, and received as security a transfer of the assets of the firm; the business being conducted in the name of Fish Bros. & Co., Agents. In 1880 Jerome I. Case brought a suit against the firm to settle the respective rights of the parties under the agreement above named. During the pendency of this suit, and in the year 1882, Abner C. Fish ceased to be a member of the firm, and D. J. Morey and S. S. Lyon were admitted thereto, without change in the firm name. On the 2d day of October, 1882, a declaration for a trade-mark was duly registered in the United States patent office in the name of Fish Bros. & Co.; it being stated that the firm was composed of T. G. Fish, E. B. Fish, D. J. Morey, and S. S. Lyon, and that the trade-mark had been used by the Fish Bros. since 1873 in connection with the manufacture of wagons. On October 16, 1883, J. I. Case was appointed receiver, in the suit

brought by him against the firm; and he took possession of the wagon plant, to the exclusion of the firm of Fish Bros. & Co. Thereupon T.G. Fish and E. B. Fish made an arrangement with the Olds Wagon Company, of Ft. Wayne, Ind., for the manufacture of wagons which were marked "Fish Bros. Wagon." In September, 1885, Case ceased to act as receiver of the business at Racine, one A. O. Hall being appointed to succeed him; and thereupon Titus G. Fish resumed his connection with the Racine plant, the business of which was advertised as being conducted by "Fish Bros. & Co.,—A. O. Hall, receiver; T. G. Fish, superintendent." In December, 1886, one O. R. Johnson bought the claims of Jerome I. Case, and the assets of the firm in the hands of the receiver; and in January, 1887, a corporation was formed, under the name of the Fish Bros. Wagon Company, in which Titus G. Fish, Edwin B. Fish, O. R. Johnson, Deane, and Booth were the stockholders; Johnson being elected president; Titus G. Fish, vice president and manager; Edwin B. Fish, superintendent; and Deane, treasurer; and the property, real and personal, composing the plant at Racine, was conveyed by Johnson to the corporation. In March, 1889, Titus G. Fish ceased his connection with the corporate business; and in June, 1890, Edwin B. Fish left the employ of the corporation; and thereupon Titus G. Fish, Edwin B. Fish, and Fred B. Fish, a son of Titus G. Fish, entered into a co-partnership agreement for the manufacture of and dealing in wagons under the firm name of Fish Bros. & Co.; and an arrangement was entered into with the La Belle Wagon Works for the manufacture of wagons by that company at Superior, Wis., under the supervision of Fish Bros. & Co. Thereupon the Fish Bros. Wagon Company brought a suit in equity in the circuit court of Douglas county, Wis., against the La Belle Wagon Works and Titus G. Fish and Edwin B. Fish, to restrain the named defendants from using the trade-mark adopted by Fish Bros. and Fish Bros. & Co., on the ground that the same was owned by the Fish Bros. Wagon Company, having passed to that corporation with the transfer of the assets and good will as hereinbefore stated. The case was carried before the supreme court of the state of Wisconsin, and an opinion rendered which defined the rights of the parties, it being therein held that a trade-mark was assignable; that under the transfer made of the assets of the company, and the continued use of the trade-mark by the complainant with the assent of Fish Bros., it must be held that the right to use the trade-mark had passed to the complainant; that the fact that Titus G. and Edwin B. Fish subsequently withdrew from all connection with the corporation did not deprive the complainant corporation of the right to continue the use of the trade-mark as a means of indicating that the corporation was continuing the manufacture of the Fish wagons at Racine, Wis.; that this right to the use of the trade-mark was not exclusive; that the Fish Bros. had not by contract debarred themselves from manufacturing wagons of the same style at South Superior, Wis., or at any other place; that they had the right to attach to a place upon the wagons the words "Fish Bros.," or "Fish Bros. & Co.," together with the picture of a fish, or, in other words, to use the trade-mark in question, provided it was so done as not to induce persons to believe that

the wagons built by defendants were in fact the product of complainant's works at Racine. Fish Bros. Wagon Co. v. La Belle Wagon Works, 82 Wis. 546, 52 N. W. 595. The case being remanded for final trial to the circuit court of Douglas county, it was thence transferred to the circuit court of Milwaukee county; and in April, 1894, a final decree was therein entered, embodying in substance the rulings found in the opinion of the supreme court. The La Belle Wagon Works, becoming insolvent, ceased to manufacture wagons under the agreement with Fish Bros.; and thereupon Titus G. Fish and Edwin B. Fish, acting in concert with a number of the citizens of Clinton, Iowa, organized a corporation under the name of the Fish Bros. Manufacturing Company, for the purpose of engaging in the manufacture and sale of wagons, the plant being located at Clinton, Iowa; and Titus G. and Edwin B. Fish assigned to this corporation the trade-marks in question; and thereupon the manufacture and sale of wagons were entered upon by this corporation at Clinton, Iowa; Titus G. Fish being the president, and Edwin B. Fish the superintendent, of the company. On May 3, 1897, the present suit was begun, it being claimed in the bill exhibited on behalf of the Fish Bros. Wagon Company, of Racine, Wis., that the defendant corporation, the Fish Bros. Manufacturing Company, of Clinton, Iowa, was engaged in the manufacture and sale of wagons of the style, make, and appearance of the Fish wagon made at Racine; that Titus G. Fish and Edwin B. Fish could not convey or assign a right to the use of the trade-mark to a third party; that the use thereof by the defendant was a violation of the rights of complainant, as secured to it by the decree entered in the circuit court of Milwaukee county, Wis., the proceedings had in that case being set forth at length in the bill; that the trade-mark was of value, and the use thereof by the defendant was in fraud of the rights of the plaintiff; and that the defendant company, in the catalogues, folders, and advertisements of its business, which it was using in the trade, was exceeding the rights secured to Titus G. Fish and Edwin B. Fish in the decree entered in the Wisconsin case, and was trespassing upon the rights therein decreed to the complainant.

It is clear that the rights of the parties in this case are based upon the construction to be given to the decision in the case decided in Wisconsin. That suit was brought by the complainant herein for the express purpose of having adjudicated the extent of the rights it had acquired, as against Titus G. Fish and Edwin B. Fish and their assigns, to the business built up at Racine, and in the trade-marks and trade-names connected therewith; and the conclusions therein reached must be held to be the measure of the rights of the parties to the present suit. As already stated, the complainant herein recites in the bill the bringing of the suit in the circuit court in Wisconsin, and the proceedings had therein; and the defendant, in the answer, sets forth the same at length, and avers that the rights it claims as the assignee of Titus G. Fish and Edwin B. Fish are those adjudged in that case; and hence the first question for consideration is the construction to be placed on the adjudication had in that suit. In the opinion of the supreme court of Wisconsin it is,

in effect, held that by the transfer to the complainant of the assets and good will of the plant and business which had been created at Racine, Wis., under the several names of Fish Bros., Fish Bros. & Co., and Fish Bros. & Co., Agents, that company had secured the right to continue the manufacture of the so-called "Fish Wagon" at Racine, as the successor to the preceding firms, but that such right to manufacture the Fish wagon was not exclusive in complainant, and that Titus G. and Edwin B. Fish, as the originators of that style of wagon, had the like right to manufacture wagons of the style and make known as the "Fish Wagon," and that both parties had the right to use the trade-marks and trade-names associated with the Fish wagon, as the means of indicating the style and kind of wagon they dealt in, but that the defendants Titus G. and Edwin B. Fish must not represent that they were the successors to the Racine business, or that their wagons were in fact the product of the Racine factory. Practically, the court proceeded on the theory that the trade mark and names might subserve two distinct purposes,—the complainant having the right to use the same to indicate that it, as the successor to the parties who had built up the business at Racine, was continuing in the manufacture of the Fish wagon in the plant or factory where it originated, at Racine, and the defendants Titus G. and Edwin B. Fish having the right to use the trade mark and names to indicate that they were engaged in the business of manufacturing the Fish wagon; they being the persons who had previously been engaged in the manufacture thereof, and from whom it derived its name. It appearing that the assets and good will of the business at Racine, together with the right to a limited use of the trade-mark, had been conveyed to complainant, the court further held that the Fish Bros. could not rightfully represent that they were the successors to the Racine business, or that the wagons by them made were the product of the Racine factory. In brief, it was held in that case that the complainant and the defendants therein had an equal right to continue and engage in the business of manufacturing the Fish wagon, and each party had a right to a limited use of the trade-names and trade-mark associated with that known style of wagon.

The rights of the parties having been thus adjudicated, the next question presented is whether the present defendant can rightfully claim to be a successor to the rights adjudged to be held by Titus G. and Edwin B. Fish; it being claimed on behalf of complainant that the rights reserved to them in the decision of the Wisconsin court are personal only, and not transferable. The ruling that sustained the validity of the transfer to the complainant of its rights in the premises sustains the transfer from Fish Bros. to the defendant corporation, it being settled that trade marks and names are assignable. Richmond Nervine Co. v. Richmond, 159 U. S. 293, 16 Sup. Ct. 30.

It thus appears that the defendant company has the right to make the Fish wagon; has the right to advertise that its business is conducted under the supervision of Titus G. and Edwin B. Fish, who were the originators of the Fish wagon; has the right, for these purposes, to use the trade-mark and trade-names heretofore associated

with the Fish wagon, but, in the exercise of these rights, must see to it that it is not represented that the Fish wagons by it made are the Fish wagons made by complainant at Racine. Thus we are brought to a consideration of the question whether the evidence shows that the defendant has overstepped the limits defined in the decree entered in the Wisconsin court, in advertising the business by it conducted at Clinton, Iowa, and in the sale of its products. It is strongly urged in argument on behalf of complainant that if the defendant company is permitted to advertise and mark the wagons of its manufacture with the name "Fish Wagon," or the equivalent, it will inevitably result in confusion, and that many farmers and other purchasers of wagons will be misled, through the general association of that name with the wagons built in the Racine factory. There is foundation for this belief, but the only remedy suggested by counsel for the complainant is that the defendant company be wholly restrained from using the trade-mark and trade-names in connection with the wagons manufactured by it, which would be, in effect, to hold that the complainant had secured the right to the exclusive use of the trade-mark and trade-names, whereas it has already been adjudicated that complainant does not own such exclusive right either in the trade mark and names, or in the manufacturing of wagons of the style and make known as the "Fish Wagon." The liability to confusion suggested by counsel grows out of the fact that the Fish Bros. and the defendant company have as full right to make and vend the Fish wagon as is possessed by complainant, and the injury to the business of the latter, which is so largely dwelt upon in argument, is mainly due to the fact that the defendant is a lawful competitor in the business of making the Fish wagon. The evidence shows that, in the catalogues and folders issued by the defendant company, it is plainly stated that its factory is situated at Clinton, Iowa, and the wagons sent out for sale are so marked; and the effort rather seems to be in the line of claiming that the wagons made at Clinton are superior to the product of the factory at Racine. In the decree entered in the circuit court of Milwaukee county, based upon the decision of the supreme court of Wisconsin, it, inter alia, decreed that the defendants are enjoined from giving out or claiming that they are manufacturing the genuine Fish wagon, or that the complainant is not manufacturing the genuine Fish wagon. This portion of the decree evidently proceeds on the assumption that, as it had been decided that both parties had the right to make the so-called "Fish Wagon," it could not be permitted to the defendants to assert that the genuine Fish wagon was made by them, or that it was not made by the complainant, for, in effect, that would be an assertion that the complainant was not making the Fish wagon; and hence the defendants in that case were enjoined from asserting that the Fish wagon by them made was the genuine Fish wagon, because, under the ruling of the supreme court of Wisconsin, the wagons made by complainant at Racine, and by the defendants at Superior or elsewhere, are alike genuine Fish wagons, if made in the style and manner covered by that name, and therefore the defendants could not rightfully assert that their wagons were the

genuine Fish wagons, because that assertion would imply that none other were genuine. Under this view of this decision, it is not rightfully open to either the complainant or the defendants in that case to assert that the wagons by them made are the only genuine Fish wagons. It is open to the complainant to assert that, as the successor to the business built up at Racine by the pre-existing firms, it is continuing the business of making the Fish wagons in the original factory at Racine; and it is open to the defendant company to assert that it is engaged in the manufacturing of the Fish wagon at Clinton, Iowa, under the supervision of Titus G. Fish, the founder, and of Edwin B. Fish, who, with his brother Titus G. Fish, were the originators of the Fish wagon; but it is not open to either of the parties to assert that the product of their factory is the only genuine Fish wagon. In some of the advertisements, put out by persons engaged in selling the product of the Clinton factory, it is asserted that these wagons are the only genuine Fish wagons. Such advertisements are clearly in violation of the provisions of the decree entered in the Wisconsin case. In some of the circulars and other advertising material sent out by the defendant, it is said, in effect, that the Clinton wagon is the only Fish wagon made by the genuine Fish Bros. Thus, on the picture of a fish, used as a sticker by the defendant company, it is said, "The Only Fish Bros. Wagon, made by the Original & Genuine Fish Bros., comes from Fish Bros. Mfg. Co., Clinton, Iowa." This use of the word "genuine" violates the spirit of the decree in the Wisconsin case, as it suggests that there are genuine and nongenuine Fish wagons in the market, although it does so only indirectly. This use of the word "genuine" should be discontinued, as it gives occasion for the claim that it is intended thereby to assert that the genuine Fish wagon can only be had at the factory of defendant.

Under the facts of the case, and the adjudication of the rights of the parties in the case in Wisconsin, it must be held that the complainant is not entitled to a decree and injunction as prayed for, restraining the defendant company from using the trade-marks and trade-names connected with the Fish wagon, or from advertising that it is engaged in the manufacture of the Fish wagon under the superintendence of the Fish Bros., who were the originators of that style of wagon. The utmost complainant can ask is a decree reciting that the defendant company, in its use of the trade marks and names associated with the Fish wagon, is subject to the limitations found in the decree entered in the circuit court of Milwaukee county, Wis., and enjoining the further use of the word "genuine" in the ways in which it appears to have been used in the stickers sent out by the defendant, and in some of the advertisements used by the agents of the defendant company.