**McCORMICK & CO., Inc., v. B. MANISCHE-WITZ CO.**

No. 11687.

United States Court of Appeals
Sixth Circuit.

Sept. 3, 1953.

As Amended on Denial of Rehearing
Oct. 7, 1953.

C. Willard Hayes, Washington, D. C. (Wood, Herron & Evans, by Truman A. Herron, Cincinnati, Ohio, Cushman, Darby & Cushman, by William M. Cushman and C. Willard Hayes, Washington, D. C., on the brief), for appellant.

Asher Blum, New York City (Zugelter & Zugelter, Cincinnati, Ohio, on the brief; Mock & Blum, New York City, of counsel), for appellee.

Before SIMONS, Chief Judge, and ALLEN and MILLER, Circuit Judges.

SIMONS, Chief Judge.

The suit was for infringement of a trade-mark and sought injunction and damages for both infringement and unfair competition. The District Court denied the injunction and dismissed the bill. The record discloses the following facts fairly established by the evidence.

The appellant, plaintiff below, had been for many years engaged in the business of manufacturing, packing, and distributing flavoring extracts, spices, condiments, insecticides, household chemicals, and similar products. In 1938, to differentiate its food products from other articles, it engaged James Harley Nash, a designer, to re-design its labels for all of its food packages. Nash designed and McCormick adopted the trade-mark here relied upon. It consisted of the use of the letters Mc standing boldly above a straight bar or band against a contrasting background, the capital M being much higher than the small c adjoining it, later to be shown by cuts of the mark. The trade-mark was initially registered in 1938 and later re-registered under the Trade-Mark Act of 1946, on May 24, 1949, registration number 510053.

The appellee's business was founded in 1889 and dealt from the beginning in "kosher" products. From 1938, when the plaintiff adopted the trade-mark in issue, until 1948 the appellee was engaged exclusively in the sale and distribution of bakery products, such as matzoth and matzoth products. In 1948, it added "gefilte fish" to its line. In 1935, Manischewitz Food Products, Inc. was organized by other members of the founder's family to carry on an independent business in spices, condiments, tea, canned soups, and other grocery products and in December, 1948 its business was acquired by the appellee. There being no uniformity between the labels of the two Manischewitz companies, the appellee decided to adopt, in addition to its old trademarks, a new label and display for all of its products so as to create a family resemblance indicating that there is only one Manischewitz. In August 1948, it engaged the above-named Nash to design new labels and packages and a new trade-mark for its entire line. Nash exhibited to it labels previously designed for other clients, including the trade-mark here in issue. The mark finally selected was that here charged to infringe and a specimen of it will, likewise, be presented by a cut. The accused mark came to appellant's attention in December, 1949, at which time it notified the appellee that it constituted infringement of its registered mark. The appellee refused to discontinue and, subsequently, applied it to its entire line of food products. From 1916 on, the defendants had used the initials BMco arranged vertically within the so-called Star of David and under a ribbon pennant containing a slogan in Hebrew characters.

The products of the appellee and its predecessor have always been kosher products destined primarily to the Jewish trade. However, they are also offered to the general public and are available in many supermarkets, chain stores and self-service stores. In 82 out of a total of 159 stores investigated, the goods of both parties were sold and were often exhibited side by side. In three instances there was proof of confusion on the part of the general public, but this was considered by the court as insignificant. Upon visual comparison of the two trade-marks, the court found as a fact that the appellant had not sustained its burden of proving infringement and that the differences between the two marks were sufficient to dispel any likelihood of confusion, mistake, or deception of purchasers as to the source or origin of the goods and that the use by the appellee of its name in connection with the accused mark eliminated such likelihood. As ground for its finding, it recited that appellant had not proved a sufficient number of instances of actual confusion.

It must be noted at the outset that while in the 1905 Trade-Mark Act, 33 Stat. 724 § 16, the test of infringement was actual confusion, the Lanham Act of 1946, § 32(1) (a), 60 Stat. 437, 15 U.S.C.A. § 1114 (1) (a), is of broader scope and applies the remedies therein provided to any colorable imitation of a registered mark which is

746

likely to cause confusion or mistake or to deceive purchasers as to source or origin. As we said in Mishawaka Rubber & Woolen Manufacturing Company v. S. S. Kresge Company, 119 F.2d 316, 325: "The degree of resemblance necessary to constitute infringement is incapable of exact definition." It follows, however, that there may be infringement even though there is no identity between the registered mark and the one accused. It also follows that while extrinsic facts are significant, the likelihood of confusion may as readily be perceived by a reviewing court upon visual comparison as by a court of first instance, unless extrinsic facts compel determination one way or the other.

An extrinsic fact relied upon by the defendant is that its products are produced and distributed for sale principally to the Jewish trade and there is, therefore, no likelihood of confusion with the plaintiff's non-kosher products. We readily agree that customers, cautious under ritualistic compulsion, will not be confused. This does not, however, dispose of the probability that purchasers seeking McCormick products, identified by the Mc mark and lacking Jewish incentive to care may be deceived where the goods of both parties are displayed side by side with resembling symbols. The cases relied on by the defendant, namely, Benrose Fabrics

that there can be no likelihood of confusion since the plaintiff uses the mark directly above the word McCormick while the defendant displays its mark above the name Manischewitz was briefly disposed of in a like situation by the response of Judge Dennison of this court in Nashville Syrup Company v. Coca-Cola Company, 215 F. 527, 530: "But a trade-mark right which could be so avoided would be of no value. Indeed, even under the secondary meaning theory, and without the aid of the statute, such marking would not sufficiently differentiate." Moreover, the registered trade-mark is not the combination of Mc and McCormick and the use of initials in the precise form registered imparts no invalidity to a trade-mark, Great Atlantic & Pacific Tea Company v. A. & P. Radio Stores, Inc., D.C.Pa., 20 F.Supp. 703, 705, 706, nor is infringement negated by the use of an accused's own initials, reaching even to a case where similarity is more obvious to the ear than to the eye, Esso, Inc. v. Standard Oil Co., 8 Cir., 98 F.2d 1, 7.

The previous use by the defendant of its own initials in a symbol of widely differing composition does not anticipate and, of course, the defendant was and still is free to use its older trade-mark upon all of its products since there is neither identity nor recognizable similarity between it and the plaintiff's mark.

 

Corporation v. Rosenstein, 7 Cir., 183 F.2d 355, Ambrosia Chocolate Company v. Ambrosia Cake Bakery, Inc., 4 Cir., 165 F.2d 693, and Brown & Bigelow v. B. B. Pen Company, 8 Cir., 191 F.2d 939 do not deal with situations where trade-marked and accused goods are sold from the same shelves in the same stores. The argument

It should have been easy for a designer of the skill of Nash to have adapted the defendant's old trade-mark to his employer's needs, or have designed an entirely new one which would have completely avoided confusion or its likelihood. The likelihood of confusion is, of course, a matter of opinion based upon comparison, but a determination

of deceptive similarity is strongly supported by even a small number of actual mistakes made by average customers, and the law sets no numerical standard for misguided purchasers.

the 1905 Act to the M&C Foods, Inc., of Chicago, and re-registered under the 1946 Act, we think a limited injunction, as hereinafter directed, will sufficiently protect the appellant.

Upon this page is depicted a sufficiently typical use of the registered trademark and an equally typical design of the accused mark. While there are aspects of dissimilarity, it will be observed that the "Mc" in each label dominates it and the reduced size of the distinguishing components in the defendant's label are assigned a minor role. Though the coloring, for obvious reasons, is here in black the similarity of a red background with blue or green departures for name of the producer strikes the eye with an aspect of sameness. This is not to say that the owner of the mark has any proprietary title in the colors used,—it is only mentioned by way of emphasis as increasing the probability of confusion. Since the trade-mark was limited in the patent office to avoid conflict with an "Mc" mark previously registered under

Since it does not appear, upon this record, that infringement by defendants was wilful, and there is lack of proof of substantial damage to the plaintiff, there will be no judgment entered upon the issue of unfair competition and no accounting will be ordered for loss of profits. The record discloses that the defendant's business decreased after the adoption of the accused labels and the plaintiff's business substantially increased. Besides that, the items sold by the defendant in competition with the plaintiff were mainly spices and tea which were sold in limited quantity mainly to a different class of purchasers. Mishawaka Rubber & Woolen Manufacturing Company v. S. S. Kresge, Co., 316 U.S. 203, 62 S.Ct. 1022, 86 L.Ed. 1381; Champion Spark Plug Company v. Sanders, 331 U.S. 125, 131, 67 S.Ct. 1136, 91 L.Ed. 1386;

Hemmeter Cigar Company **v.** Congress Cigar Company, 6 Cir., 118 F.2d 64, 71–72. The injunction will be limited to those products which are within the appellant's limited trade-mark grant and which compete with similar products advertised and sold by the appellee, and the district court is free to fix a reasonable time at which the injunction is to take effect.

Reversed and remanded for further proceedings in conformity herewith.