SLEEPER LOUNGE COMPANY, a copartnership consisting of Charles Kunzelman and James A. Anderson, Charles Kunzelman and James A. Anderson, Appellants,

v.

BELL MANUFACTURING COMPANY, a corporation, Appellee.

No. 15495.

United States Court of Appeals Ninth Circuit.

March 21, 1958.

---

Lyon & Lyon, R. Douglas Lyon, Los Angeles, Cal., for appellants.

Elliott & Pastoriza, Santa Monica, Cal., Adelbert Schapp, San Francisco, Cal., for appellee.

Before CHAMBERS and BARNES, Circuit Judges, and CLARK, District Judge.

BARNES, Circuit Judge.

Appellee sued appellants below and recovered damages and attorneys' fees for infringement of and unfair competition with appellee's Registered Trade-Mark No. 377,752, dated May 11, 1940. Jurisdiction was in the lower court. 15 U.S. C.A. § 22. This Court has jurisdiction of the timely appeal. 28 U.S.C § 1291.

The trade-mark in question consists of the words "Wonder Chair," (with a disclaimer as to the word "Chair" apart from the mark) as applied to "Reclining Chairs and Convertible Chair Beds" in Class 32, Furniture and Upholstery.

The court, trying the case without a jury, made findings which stated that appellants adopted and used the words "Wonder Bed" for a lounge or contour bed, which is capable of being adjusted for use as a bed, a lounge, or a reclining chair. (Finding 11.) Further,

"The said lounges or contour beds thus sold and distributed by the Defendants are embraced within the product line of goods specified in Plaintiff's Trade-mark Certificate and have substantially the same descriptive properties as Plaintiff's reclining chairs and/or convertible Patent Office classification, namely

Class 32 (Furniture and Upholstery)." (Finding 12.)

The Conclusion of the District Court was that appellee's trade-mark was valid, and infringed by appellants.

Appellants object to the Findings and Conclusions hereinabove mentioned, and to (a) the injunction granted; (b) the damages of $1000.00 awarded; and (c) the attorneys' fees of $500.00 awarded.

Since our determination on the question of infringement is dispositive of this appeal, we find no occasion to pass upon the propriety of the finding below that appellee's trade-mark was valid. We, therefore, refrain from consideration of the validity of the trade-mark sued upon.

■ The primary question, then, is whether the appellant has in any way infringed the trade-mark claimed by appellee. We understand that there are three tests readily applied to any trade-mark to determine if there has been "identification."

(1) Is there similarity of sound?

(2) Is there similarity of sight?

(3) Is there similarity of meaning?

Let us examine the respective marks actually used by the parties. Appellee trade-marked the words "Wonder Chair." It most frequently, though not always, used the words "Bell's Wonder Chair" (Plaintiff's Exhibit Nos. 4, 5, 7, 8, 10 and 19), or, "Bell Wonder Chair—(not a bed)" (Plaintiff's Exhibit No. 6), or, "The Bell Wonder Chair-Bed" (Plaintiff's Exhibit No. 9), or, "Wonder Love Seat" (Plaintiff's Exhibit No. 9), or, "Wonder Cushioned Divan" (Plaintiff's Exhibit No. 9).

Appellants used the words "Sleeper Lounge, The Wonder Bed" (Plaintiff's Exhibits 13 to 18, incl.; Defendants' Exhibits B and E), or, "Electrical Wonder Bed" (Plaintiff's Exhibit No. 20), although, originally it used merely "Sleeper Lounge Bed" (Defendants' Exhibits A, F, G, H, and J), or, "Sleeper Lounge."

*I—Was the Trade-mark Infringed?*

Appellee urges that any use of the word "wonder" *is an exact copy* of the mark used by appellee. Appellee, to be logical, must assume that use of the phrase "Wonder Bed" is so similar to "Wonder Chair"[1] in meaning as to be an exact copy. And that "Wonder Bench" or "Wonder Car" (on each of which one sits) would be a colorable imitation of this trade-mark. This seems illogical, particularly when the evidence discloses the Patent Office has issued, prior to plaintiff's application, trade-marks as follows: (a) "Wonder-Bar," No. 554,367, (b) "Wonder Bar," No. 572,430, (c) "Wonder Value," No. 359,027, and, (d) "Wonderfoam," No. 585,899, *all being in Class 32, "Furniture and Upholstery."* (Defendants' Exhibit D.)

But we have seen appellants have not used simply "Wonder Bed," but "Sleeper Lounge, The Wonder Bed" while appellee has used not simply "Wonder Chair," but "Bell's Wonder Chair."

■ We are required to consider the composite trade-mark in its entirety.[2]

■ Is there any likelihood of confusion or mistake in such use? Would the ordinary purchaser, buying with ordinary caution, be misled? It is true that the question of any likelihood of confusion or mistake depends on many factors, including type of product involved, the manner of distribution of the product, the market for the product, the

---

1. Disclaimed material forming part of a registered trade-mark cannot be ignored. It is still part of the composite trade-mark which must be considered in its entirety. P. D. Beckwith's Estate v. Commissioner of Patents, 1920, 252 U.S. 538, 40 S.Ct. 414, 64 L.Ed. 705; Van Camp Sea Food Co. v. Westgate Sea Products, 9 Cir., 1928, 28 F.2d 957.

2. Appellee's expert testified the word "Bell" was the device most clearly identifying the source of the product [Tr. p. 49], and the trade-mark used was "always" "Bell's Wonder Chair" and not "Wonder Chair." [Tr. p. 50.]

"Q. The word 'Bell' has always been superimposed above the word 'Wonder Chair?' A. I believe so." [Testimony of Harold John Miller, Tr. p. 152.]

product's function, and the similarity between the registered marks, and the alleged infringing word or phrase. But the latter is the one essential feature, without which the others have no probative value. And in this case there has been not a word of testimony relating to any actual mistake, nor of a single purchaser mistaking the Bell Chair for a Sleeper Lounge Bed, or vice versa. There has been no missent mail, and no mistaken phone calls.[3]

We do not see how any intent to confuse or deceive can be laid at appellants' door. There is use of entirely different format; there is no similarity of sight or sound; there is no more similarity of meaning than if appellee advertised a "Wonderful Chair" and the appellants a "Wonderful Bed;" one a "Beautiful" or "Beauty Bed;" the other a "Beautiful" or "Beauty Chair." Without proof of secondary meaning there can be no confusion.[4]

Since the trial court rested its finding of infringement primarily on the similarity of meaning between the trademarks, "Bell's Wonder Chair" and "Sleeper Lounge, The Wonder Bed," we are "in as good a position as the trial judge to determine the probability of confusion." Miles Shoes, Inc., v. R. H. Macy & Co., 2 Cir., 1952, 199 F.2d 602, certiorari denied 345 U.S. 909, 73 S.Ct. 650, 97 L.Ed. 1345; Warner Brothers Co. v. Jantzen, 2 Cir., 1957, 249 F.2d 353, 355 (dissent).

In McCormick & Co., Inc. v. B. Manischewitz Co., 6 Cir., 1953, 206 F.2d 744, the court holds at page 746:

" * * * It also follows that while extrinsic facts are significant, the likelihood of confusion may as readily be perceived by a reviewing court upon visual comparison as by a court of first instance, unless extrinsic facts compel determination one way or the other."

See, also, Best & Co. v. Miller, 2 Cir., 1948, 167 F.2d 374; California Fruit Growers Exchange v. Sunkist Baking Co., 7 Cir., 1948, 166 F.2d 971.

Appellee manufactured a chair capable of assuming the position and appearance of a, bed; appellants manufactured only beds, incapable of assuming the position or appearance of a chair. In using either product, an occupant could so arrange the piece of furniture that he could "lounge" in it. Appellee's chair was sold for, and as, a bed, but appellants' bed was not sold for, or as, a chair.

We can find no evidence of confusion in the record, nor any evidence of likelihood of confusion.

We find no infringement. Judson-Dunaway Corp. v. Hygienic Products, 1 Cir., 1949, 178 F.2d 461; 3 Callmann, Unfair Comp. and Trade-Marks (2nd Ed. 1950).

## II—The Damages.

No actual damages were proved at the trial. No loss of business was proved. There was no showing of fraud or palming off. Good faith is a defense. So is the *de minimis* rule. Had there been infringement here, injunctive provisions would have satisfied all the equities of the case. Saxlehner v. Siegel-Cooper Co., 1900, 179 U.S. 42, 21 S.Ct. 16, 45 L.Ed. 77; Golden West Brewing Co. v. Milonas & Sons, 9 Cir., 1939, 104 F.2d 880, 882.

The statute authorizing recovery of damages does not require such an award in every case.

In view of our conclusion of lack of infringement, there can be no damages awarded.

## III—Attorneys' Fees.

We find no authority for the award of attorneys' fees in this case, even had there been infringement. None has been cited to us. There was no basis proved for punitive damages. Perhaps some

3. Tr. pp. 76, 78, 146, 158.
4. We are not here concerned with the possible effects of secondary meaning for appellee's mark. There was no evidence of secondary meaning at the trial and that problem is not involved here.

day Callmann's suggestion and advice will be incorporated into statute or judicial legislation.[5] We will not do so here, for this is not the case, factually, in which to innovate.

The judgment is reversed, with instructions to the lower court to enter a decree establishing the validity of the mark; that there has been no violation thereof; with no damages awarded, and no attorneys' fees in the lower court.

Reversed.

---

5.   4 Callmann, Unfair Comp. & Trade-Marks 1903 (2d Ed. 1950).