PLOUGH, INC., Appellant,

v.

KREIS LABORATORIES, a Corporation, et al., Appellees.

No. 17719.

United States Court of Appeals Ninth Circuit.

Feb. 20, 1963.

Rehearing Denied March 26, 1963.

Pope, Circuit Judge, dissented.

Lyon & Lyon, Charles G. Lyon and Frank E. Mauritz, Los Angeles, Cal., for appellant.

Kendrick & Stolzy, Elwood S. Kendrick and John P. Scholl, Los Angeles, Cal., for appellee.

Before POPE, BARNES and JERT-BERG, Circuit Judges.

BARNES, Circuit Judge.

Appellant brought suit below charging appellees with the infringement of its trademark "Coppertone," a word which had acquired an established secondary meaning in other litigation. Cf: Douglas Laboratories Corporation v. Copper Tan, Inc., 2 Cir. 1954, 210 F.2d 453. Appellant sought an injunction and an accounting. Various defenses and counterclaims appeared in the answer, such as (a) allegations of a prior use by appellees; (b) a prior state trademark registration by appellees of "Copatint" in New York, Florida and California, and the prior registration of "Copper Tan" in California; (c) the lack of competition between the parties; and (d) the lack of confusion between their products.

Thereafter a consent judgment was entered on November 12, 1959 in the United States District Court, Southern District of California, decreeing (1) the ownership of the trademark Coppertone in appellant; (2) that use of the words Copa Tan, Copa Cream and Copa Tint by appellees was likely to cause confusion; (3) that appellees were per-

petually restrained from using the names Copatan, Copatint or Copacream, "or any other names confusingly similar thereto," or to use Coppertone, or "to use the word, root, prefix or suffix Copa or Copper;" and (4) the injunction was stayed to July 1, 1961, to permit the appellees to sell their present stock of goods. Despite this stay, a writ of permanent injunction containing language similar to that of the consent judgment was issued May 11, 1961, and served on May 12, 1961, on appellees. On June 9, 1961, within the period of the original stay, appellant's agent purchased from appellees two suntan products manufactured by appellees, one labeled Cōca Tan and one labeled Cōca Tint.[1]

An order to show cause charging appellees with violation of the injunction was issued June 13, 1961. An affidavit was filed, alleging the original litigation above mentioned had been settled by the signing of a contract, and the payment by appellant to appellees of $20,750.00, and that the only issue before the court below on the order to show cause was "whether or not the use of the words Coca Tan and Coca Tint are within the scope of the injunction."

At the hearing, Exhibits II, LL and MM were placed in evidence and plaintiff's and defendants' counsel stipulated that certain affidavits might be considered as evidence. Further, the plaintiff offered a certain portion of the deposition of Harry B. Solmson taken on November 8, 1961, which was received in evidence. At the conclusion of the plaintiff's case, the defendants moved the court to dismiss the plaintiff's order to show cause on the ground that no sufficient showing of contempt had been

made. Defendants' motion was argued, and the following Findings of Fact and Conclusions of Law were entered:

## "FINDINGS OF FACT

"1. The Plaintiff is the owner of the trademark Coppertone which it affixes to containers of suntan lotions as represented by Exhibit MM.

"2. The Defendants are the owners of the trademarks Coca Tan and Coca Tint which marks are affixed to containers of suntan lotions as represented by Exhibits LL and II, respectively.

"3. Plaintiff is the owner of certain rights, titles and interests in Copa Tan, Copa Tint and Copa Cream.

"4. Plaintiff is not and has never used the names Copa Tan, Copa Tint and Copa Cream in connection with any of its products, goods or services.

"5. The names Coca Tan and Coca Tint are not confusingly similar to Copa Tan, Copa Tint and Copa Cream.

"6. It is not true that the Defendants' trademarks Coca Tan and Coca Tint are mere colorable attempts to avoid confusion with Plaintiff's trademark Coppertone.

"7. The Plaintiff has produced no evidence showing that the Defendants are now using any trademark confusingly similar to Coppertone.

## "CONCLUSIONS OF LAW

"1. The Defendants by the utilization of trademarks Coca Tan and Coca Tint or suntan lotions are not

---

[1]. The stayed injunction permanently enjoined appellees from manufacturing, selling etc., products "bearing * * * the names Copatan, Copatint or Copacream, or any other name or names confusingly similar thereto, or to the trademark Coppertone, specifically including any trademark or trade name containing the word, root, prefix or suffix Copa or Copper." This injunction was stayed to and including July 1, 1961, for the purpose of allowing Kreis "to liquidate its present inventory." Nothing in the record shows when the stock of Coca Tan and Coca Tint bottles were manufactured or first used, or that they were or were not ever a part of the pre-injunction or then "present inventory." So far as the record in this case discloses, we must conjecture whether the products purchased (which are the basis of the alleged violation of the injunction issued) fall within or without the exception carved out of the injunction.

selling a product which is confusingly similar to Plaintiff's product Coppertone as applied to suntan lotions.

"2. By the use of Coca Tan and Coca Tint the Defendants are not selling suntan products which are confusingly similar to Copa Tan, Copa Tint and Copa Cream.

"3. Defendants are not now infringing the trademark Coppertone by reason of the selling, marketing and distributing of suntan products under the names Coca Tan and Coca Tint.

"4. Defendants are not now infringing or damaging any rights Plaintiff has in the names Copa Tan, Copa Tint and Copa Cream by reason of Defendants selling, marketing and distributing suntan products under the trademarks Coca Tan and Coca Tint."

The judgment entered was that plaintiff-appellant's motion for an order to show cause why defendants-appellees should not be punished for contempt be, and it was, dismissed. Timely appeal was taken here. 28 U.S.C. § 1291.

The court below found no "confusing similarity" between the words Copa Tan, Copa Tint, and Copa Cream and Coca Tan and Coca Tint. Appellant urges this is clear error; the appellees urge that appellant simply failed to prove its case.

Appellant urges that all appellees have done is change one letter. This is not true. The original injunction referred to four coined words—Coppertone, Copatan, Copatint and Copacream. Coppertone is not here involved or material. The alleged infringement is composed of a pair of *two-word* phrases: Coca Tan; Coca Tint. The trial court took notice of this difference. Not only does one word become two, but the "p" becomes "c", and to the "o" there is added a macron symbol (ō). The trial court took notice of this difference. (Tr. p. 55.)

■ We have heretofore agreed with the Restatement of Torts, § 729, that the test in determining possibility of confusion is appearance, pronunciation and verbal translation. In Sleeper Lounge Co. v. Bell Manufacturing Co., 9 Cir. 1958, 253 F.2d 720, we phrased the question as whether there existed similarity of "sound, sight and meaning." Though likelihood of confusion depends upon many factors, the "one essential feature, without which the others have no probative value," is the similarity between the registered marks and the alleged infringing mark or phrase. Sleeper Lounge v. Bell Manufacturing Co., supra, at 723.

We have here considered the difference in specific appearance of the marks involved. The exhibits in evidence clearly disclose a difference in the general appearance of the product—*i. e.*, the general appearance of the containers as a whole; their shape, color and design. There was no claim of similarity or likelihood of confusion therein. The only "similarity" of packaging was that both were packaged in "spray" cans. Admittedly, the changes made in the alleged infringing phrase to some extent affect the physical appearance of the trademark. If pronounced correctly, there likewise exists a change in the phonetic sound. Thus, the danger of confusion if the words were but heard, rather than seen, is to some extent eliminated.

If Copatan caused an audible verbal translation confusingly similar to Coppertone, it could only be because Copatan was pronounced with the short "o" of "köp'ẽr". (Webster's New International Dictionary, 2d ed., 1956.) If pronounced with the long "o" of "old", it would seem not to be confusingly similar in sound. Such an unconfusing pronunciation was insured by the placing of the macron symbol over the "o" in the alleged infringing first word.

■ Counsel for appellant argue that perhaps the words Cōca Tan might be mispronounced over the radio or on television. But there was no evidence of such mispronouncement, or of any other confusion. We can take judicial notice

of the fact that many suntan lotions are advertised by word of mouth only over the radio, and by word of mouth and by sight over television, but we cannot take judicial notice that many radio and/or television announcers do or would mispronounce simple words bearing a simple symbol of pronunciation so that such mistake occurs, or is likely to occur, in such numbers as to cause confusion.

In addition to the change in sight and sound, the prefix used—"Cōca"—establishes a different meaning than that of the prohibited prefix "Copa"; if any is established by the latter. The use of cocoa-butter in suntanning concoctions is well known to the public. No such meaning is suggested by use of the prefix "Copa".

We do agree with appellant that the seller of a trademark has a special duty to avoid confusion with a name he has sold. Fish Bros. Wagon Co. v. La Belle Wagon Works, 82 Wis. 546, 52 N.W. 595, 16 L.R.A. 453 (1892). The lower court concluded the seller had here avoided any such confusion. We agree.

We also agree with appellant that an infringer, "once caught," should have his conduct carefully scrutinized in any future operations so as to determine his intent in going as far as he does. He must "be required to keep a safe distance away from the margin line." Broderick & Bascom Rope Co. v. Manoff, 6 Cir. 1930, 41 F.2d 353, 354.[2]

But here no one was "once caught" in the usual sense of those words. The consent decree is a two-edged sword. In the original suit appellant alleged it owned the trademark Coppertone—issued January 25, 1955; and that the trademark had acquired a secondary meaning; that Copatan and Copatint[3] infringed Coppertone. Appel-lees urged as a defense, among many, that they had lawfully acquired the trademarked name Copatint by registration in New York and Florida in July 1952 and in California in June 1952. This litigation was settled by the payment of a substantial sum of money to appellees by appellant, and a contract was entered into between them. The terms of that contract are not before us, although the fact of its existence is. What rights are therein established is not a question now before us. A consent judgment was entered into by the parties. We are required to and do respect it, and we are bound, as are the parties to it, by the law of the case. Artvale, Inc. v. Rugby Fabrics Corp., 2 Cir., 1962, 303 F.2d 283. But we do not draw any inferences from the pleadings and the consent decree that anyone was "caught" doing anything. Appellees later either violated the injunction, or they did not. The court below held on the evidence before it that the defendants-appellees were not in violation.

We keep in mind we are concerned here with a secondary meaning existing only as to one of the words mentioned in the injunction—the word Coppertone. No secondary meaning was alleged, claimed or proved as to Copatint or Copatan.

We agree with appellant that the question is not whether there was confusion proved between the protected marks and the alleged infringing words, but whether there was a *likelihood* of such confusion existing. (Br., p. 10, and cases cited.) But one of the better ways to prove likelihood of confusion in the future is to prove it existed in the past. We cannot say there does exist a likelihood of any confusion, on the sparse record before this court. There is not one word of evidence as to the impact or effect of the supposed similarity of the

---

2. In the case cited, the alleged infringer sold "Au-Tow-Line" in competition with "Autowline," both being tow lines for automobiles. The alleged infringer had been restrained from using the word "Autowline" or the hyphenated word "Au-Tow-Line." The alleged infringer then used "Auto-Tow-Line" as well as (by mistake) the precise word "Au-Tow-Line."

3. No mention of Copacream appears in the original *complaint*.

products upon the market.[4]  A "trademark is only protected *where* and *when*, and in the facts of each case, there is actual or likely confusion as to the source of the article in commerce." Mershon Co. v. Pachmayr, 9 Cir. 1955, 220 F.2d 879, 883.  Appellant here has never used the words Copatan, Copatint or Copacream in any aspect of its business, either prior to or subsequent to the injunction.  In fact, appellant had brought out new suntan lotion products after the purchase of these names, but had, by its own choice, preferred to use, and had used, the trademarks "QT" and "Royal Blend."

■  By its filing of this proceeding, appellant attempts, not to prevent competition with any product it produces under the name of Copatan, Copatint or Copacream (for it produces none), but to prevent the marketing in the competitive market of any product marked so that it *might* remind one of Coppertone.  But as both the majority and the dissent in this case recognize—"The portion of the decree relating to Coppertone is irrelevant here."  Yet that is the only competition here involved, under the facts of this case.  We cannot read, on the evidence before us, any intent to palm off "Cōca Tan" or "Cōca Tint" as "Coppertone."

If that be so—so long as appellees do not use names confusingly similar to Copa Tan, Copa Cream and Copa Tint—(for which, plus a specific agreement not to use "the word, root, prefix or suffix Copa or Copper," the appellees had been paid cash) the appellees, as the dissenting opinion states, "had open to them a whole dictionary full of names, as well as all the fanciful names that could be fabricated from the entire alphabet."

The dissenting opinion is critical of the majority approach in "comparing the two [words] in juxtaposition only."

Such an approach is here necessary because that comparison was the only evidence before the court below.  There is an utter lack of proof:

(a) of confusion of one person buying "Cōca Tan" thinking it was "Coppertone" or "QT" or "Royal Blend," or even that it was "Copatan";

(b) that the packages looked similar or alike;

(c) that the names of the products sounded similar or alike, as was the case in several of the cases cited in the dissenting opinion;[5]

(d) that there was any exact copying;

(e) that there was any effect upon prospective customers.

Are we, in the absence of any evidence, better able than a trial judge to speculate as to what general impressions obtained with respect to the original product or its name in the mind of the public, even though that public be "the ignorant, the unthinking, and the credulous?"  We think not, but if it is our privilege to second-guess the trial court, then we are convinced a two-word trademark has a different visual impact on the public than would a one-word trademark.

Nor do we see the aptness of the suggestion that one cannot break a single word into two words and necessarily avoid a charge of infringement.  We agree.  We would not dispute the judgment of Judge Learned Hand that "Listogen" was an attempt to borrow from "Listerine."  But would it be clear beyond doubt that "Sister Rain" would be violative of the trademark "Listerine"?  We think not.

There existed in the record no evidence of injury or damage, or probable injury or damage, entitling appellant to a find-

---

**4.**  Sleeper Lounge Co. v. Bell Manufacturing Co., supra; Fairway Foods v. Fairway Markets, 9 Cir. 1955, 227 F.2d 193, 196.

**5.**  The "Peppermint Box" in American Chicle Co. v. Topps Chewing Gum, 2 Cir.,

1953, 208 F.2d 560; the word "National", with vertical stripes by National Transfer & Storage Co., as compared to the word "National" with vertical stripes by National Van Lines, Inc., National Van Lines v. Dean, 9 Cir., 1956, 237 F.2d 688.

ing that the injunction has been disobeyed.

The burden of proving the violation rested on appellant. As the trial court plaintively stated, after appellant rested below: "What evidence is there to support [the violation of] your injunction?" (Tr. p. 49.)[6] Appellant did not satisfy the court below there had been a violation of the injunction, and the evidence does not convince a majority of this court there had been.

While it is true that under certain circumstances we are as well able as the trial court to determine if there is a likelihood of confusion by a mere visual or auditory comparison of the marks protected and allegedly infringing,[7] we cannot, on the record here before us, differ with the trial judge, much less hold his findings to be clearly erroneous. See Chappell et al. v. Goltsman et al., 5 Cir. 1952, 197 F.2d 837, 839. The mere use of a name which appellees had a right to use can not in and of itself constitute unfair competition.[8]

We can find no proof of any possibility of similarity "such as would cause confusion of any appreciable number of ordinarily prudent purchasers as to the source of the goods." Restatement of Torts, § 728. Miles Shoes, Inc. v. R. H. Macy & Co., Inc., 2 Cir. 1952, 199 F.2d 602, 603.

Affirmed.

POPE, Circuit Judge (dissenting).

I am in complete accord with the majority opinion's notation that the initial fact in this case is the consent judgment which we are required to respect and enforce. As stated in Artvale, Inc. v. Rugby Fabrics Corp., 2 Cir., 303 F.2d 283, 284, which is cited in the opinion, "A consent decree represents an agreement by the parties which the court cannot expand or contract."

We must note also that in a case of this kind the question of likelihood of confusion is one for this court to decide. As Judge Barnes well stated in Sleeper Lounge Company v. Bell Manufacturing Co., 9 Cir., 253 F.2d 720, 723, "we are 'in as good a position as the trial judge to determine the probability of confusion'" citing Miles Shoes, Inc. v. R. H. Macy & Co., 2 Cir., 199 F.2d 602, from which the last quoted language was taken. This is the rule of this circuit, as settled in a long line of decisions, and it is the prevailing rule in other circuits as well. See The Fleischmann Distilling Corp. v. Maier Brewing Company, 9 Cir., 314 F.2d 149, (Feb. 12, 1963) and cases there cited. I think that such probability of confusion is demonstrated by this record.[1]

Initially, in explaining my position, I want to call attention to one aspect of the facts of the case. After the original litigation was commenced, involving the

---

6. Continuing, the court said: "You haven't got any evidence here now. If you want to rest now, why the answer is your motion is dismissed because you haven't put any evidence on." Thereafter, Exhibits II and LL and certain stipulations re evidence were received.

7. McCormick & Co., Inc. v. B. Manischewitz Co., 6 Cir. 1953, 206 F.2d 744, 746; California Fruit Growers Exchange v. Sunkist Baking Co., 7 Cir. 1948, 166 F.2d 971; Sleeper Lounge Co. v. Bell Manufacturing Co., supra.

8. "Shredded Wheat"—Kellogg Company v. National Biscuit Company, 1938, 305 U.S. 111, 59 S.Ct. 109, 83 L.Ed. 73; "Wheaties vs. Oaties"—Quaker Oats Co. v. General Mills, Inc., 7 Cir. 1943, 134 F.2d 429.

1. There is a suggestion made in the court's footnote 1 with which I must take issue.

There, after noting the stay ordered for the purpose of allowing Kreis "to liquidate its present inventory" the footnote continues: "Nothing in the record shows when the stock of Coca Tan and Coca Tint bottles were manufactured or first used, or that they were or were not ever a part of the pre-injunction or then 'present inventory.' So far as the record in this case discloses, we must conjecture whether the products purchased (which are the basis of the alleged violation of the injunction issued) fall within or without the exception carved out of the injunction."

I think this shows a misunderstanding of the facts. The "present inventory" was the collection of products making up the old stock of "Copa" products, made under the name which Kreis was

alleged trademark infringement concerning "Coppertone" and after the defendants had filed their answer, the parties entered into a settlement agreement under which the plaintiff, appellant here, paid the defendants $20,750 for its registrations and rights in the "Copa" names "together with the good will in connection therewith." As a part of the settlement the consent decree referred to in the majority opinion was entered.

The net result of all this was that the right to the use of the names "Copa Tan", "Copa Tint", and "Copa Cream", passed to the plaintiff and, what is important here, defendants were restrained from manufacturing, distributing, selling or offering for sale any suntan or sunburn product bearing the names referred to, "or any other names or names confusingly similar thereto." The portion of the decree relating to "Coppertone" is irrelevant here.

If defendants desired to engage in the manufacture, distribution, or sale of suntan or sunburn products in competition with plaintiff, they had open to them a whole dictionary full of names, as well as all the fanciful names that could be fabricated from the entire alphabet, just so long as this competition was not carried on by the use of a name or names confusingly similar to those which defendants had just sold to plaintiff. Almost at once the defendants deliberately chose to market their products under names which were about as close to "Copa Tan", "Copa Tint", and "Copa Cream", as could possibly be devised. By the mere substitution of a "c" for a "p", whatever defendants were attempting to do was at once accomplished.

There is nothing new about this sort of thing. Many court decisions have noted such maneuverings. None has described them better than the case of American Chicle Co. v. Topps Chewing Gum, 2 Cir., 208 F.2d 560, 562–563, which stated: "For the defendant has not suggested even the most diaphanous reason for se-

lecting for its peppermint box out of all possible permutations of color and design, just the plaintiff's—or at least almost the plaintiff's—combination, except for the substitution of 'Topps' for 'Chiclets.' It would be absurd to see in this anything but a hope to bring to its own net just those buyers who are on the fringe of the plaintiff's possible customers. In the language of Judge Byer, the imitation 'revealed an apparent purpose to come as close to the plaintiff's package as the law might close its eyes to, so long as Topps is used instead of Chiclets.' What we said in Miles Shoes, Inc., v. R. H. Macy & Co., 2 Cir., 199 F. 2d 602, 603, applies to the letter *mutatis mutandis:* 'Why it should have chosen a mark that had long been employed by Macy and had become known to the trade instead of adopting some other means to identify its goods is hard to see unless there was a deliberate purpose to obtain some advantage from the trade which Macy had built up.' Indeed, it is generally true that, as soon as we see that a second comer in a market has, for no reason that he can assign, plagiarized the 'make-up' of an earlier comer, we need no more; for he at any rate thinks that any differentia he adds will not, or at least may not, prevent the diversion and we are content to accept his forecast that he is 'likely' to succeed. Then we feel bound to compel him to exercise his ingenuity in quarters further afield."

In National Van Lines v. Dean, 9 Cir., 237 F.2d 688, 692, in referring to a defendant-appellee who had developed a mark resembling and similar to that of the plaintiff-appellant, we said: "He was fully aware of the fact that appellant was then using and extensively advertising such a mark. The inference is compelling that appellee intentionally sought to confuse and deceive prospective customers and thereby accomplish a transfer of business and good will from principal to erstwhile agent." Here, a similar inference is equally compelling. Defend-

---

then selling to appellant. It was after the decree that appellee started its sales using the new "Coca" names and labels.

Plainly these were no part of the "present inventory" described in the decree.

ants here were fully aware of the terms of the consent decree, that it referred to the "Copa" names, that they had sold them and the good will relating to them, and that they were prohibited by the injunction from using confusingly similar names. Clearly defendants intentionally sought to confuse and deceive prospective customers and thereby accomplish a transfer of business and good will from plaintiff who had just bought them out.

As we said in National Van Lines, supra, "if such an intent is shown, it raises a presumption that deception and confusion resulted." This is made plain in subdivision "f" of the Comment on Clause (b) under § 729 of the Restatement of the Law of Torts which refers to the "factors in confusing similarity." Subdivision "f" is as follows: "f. Intent of actor. As stated in § 717, one may infringe another's trade-mark or trade name by adopting a confusingly similar designation whether he does so innocently or for the purpose of deceiving prospective purchasers. But his knowledge or purpose is an important factor in determining whether or not his designation is confusingly similar. If he adopts the designation in ignorance of the other's trade-mark or trade name, the similarity is determined on the basis of other factors. But if he adopts his designation with the intent of deriving benefit from the reputation of the trade-mark or trade name, his intent may be sufficient to justify the inference that there is confusing similarity. Since he was and is intimately concerned with the probable re-

action in the market, his judgment manifested prior to the controversy, is highly persuasive. His denial that his conduct was likely to achieve the result intended by him will ordinarily carry little weight. While the actor's intention is thus a factor in determining the likelihood of confusion, the degree of similarity in appearance, pronunciation or suggestion (see Comments b to e) is a factor in determining the actor's intention when that is in issue."

One reason why the type of conduct manifested by the defendants in this case, in the words of the Restatement quoted above, "may be sufficient to justify the inference that there is confusing similarity", is that this is circumstantial evidence in the nature of an admission by the defendant himself. Here, as we have noted, if defendants had no predaceous competition in mind, after they sold their names "Copa Tint", etc., to the plaintiff, they could have competed by the use of any one or more of a multitude of useable names.[2]

Defendants did not choose to do that, but, on the other hand, they deliberately picked names just as close to the names sold to the plaintiff as was possible without precisely copying the original name. This indicates, as noted in American Chicle Co. v. Topps Chewing Gum, supra, that they "forecast that [they] are 'likely' to succeed", that there is likelihood that those who had known of or purchased their "Copa Tint" would now pick up "Coca Tint" thinking they were buying the same product.[3]

2. They might have used such names as "Rich Tone"; "Tawny Glo"; "Soft Tan"; "Easy Tan"; "E-Z Tan"; "Kreis Glo"; "Cafe au Lait Lotion"; "Sepia Tint"; "Tan Skin", etc. There was an unlimited freedom to create fanciful names such as "Sienanoint" (from "Siena Ointment"), etc.

3. The courts, like the compilers of the Restatement, recognize that under these circumstances the appropriate inference is that by doing this sort of thing the defendant has indicated his own opinion; —that he has something to gain and that such gain will come from the natural con-

fusion. In National Lead Company v. Wolfe, 9 Cir., 223 F.2d 195, 202, we noted the effect of this type of circumstantial evidence and quoted with approval from My-T Fine Corporation v. Samuels, 69 F. 2d 76, 77, as follows: "But when it [intent] appears, we think that it has an important procedural result; a late comer who deliberately copies the dress of his competitors already in the field, must at least prove that his effort has been futile. Prima facie the court will treat his opinion so disclosed as expert and will not assume that it was erroneous. * * * He may indeed succeed in showing that it was; that, however bad his purpose, it

Mr. Callmann has noted, (Callmann, The Law Of Unfair Competition and Trademarks, 2d ed., Vol. 3, pp. 1381–1382), that a court "must also be aware of the fact that a defendant normally does not slavishly copy the plaintiff's mark, but makes certain 'colorable changes' which are 'variations not distinctions' ". And (on p. 1378) that courts are "beset by the sometimes ingenious attempt of a defendant, who is desirous of blinding the public as well as the court, so as to get such resemblances as will enable his goods to be sold, and such differences as will provide him with cover when his practice is discovered." [4]

It is also my view that we have approached this question of confusing similarity from the wrong angle. The words used in the decree are "confusingly similar thereto". The only proper meaning to be attached to these words, as used in the decree, is that they must be taken to have the same meaning as that attached to the subject of "confusing similarity" as developed in the decisions of the courts dealing with trade-marks, trade names and unfair competition.

In my view the opinion fails to apply the standards and tests prescribed in a multitude of cases dealing with the question of likelihood of confusion. Here the court has laid the two sets of names alongside of each other and by minute analysis of what I consider minor points of differences in these names has reached its conclusion that no likelihood of confusion arises. That is not the proper approach. Thus, in the Restatement of the Law of Torts, Comment "b", § 728, relating to what constitutes confusing

similarity, it is stated, "The similarity between a designation and a trade-mark or trade name which it is alleged to infringe is not determined by comparing the two in juxtaposition only. Since it is the effect upon prospective purchasers that is important, the conditions under which they act must be considered. Purchasers do not always see the goods in juxtaposition. They rely upon memory and vague impressions. And the question is whether, remembering a trade-mark fairly definitely, they are likely to regard the designation in question as the trade-mark or as identifying the source indicated by the trade-mark." [5]

This court has said the same thing in G. Heileman Brewing Co. v. Independent Brewing Co., 9 Cir., 191 F. 489, 497: "Now, to one scanning the detailed description of these two Dutch scenes, or laying the pictures side by side, there could be no trouble in distinguishing the one from the other. But this is not the test. Will confusion result to the purchasing public by the use of the two not brought into direct or special comparison? Would the ordinary customer applying at the counter for 'Old Style Lager,' observing the care customary with purchasers in that way, be likely to be deceived or misled into buying 'Old German Lager,' if it was offered him marked with defendant's label? We are impressed that he would." The reason for this is that the purchaser of a product seldom has before him both marks or names, the original name and the new name for comparison. He has in mind only his general impressions obtained with respect to the original product or its name.

will fail in execution; if he does, he will win. * * * But such an intent raises a presumption that customers will be deceived." See also Audio Fidelity Inc. v. High Fidelity Recordings, 9 Cir., 283 F. 2d 551, 558. As the language above quoted from the Restatement says: "Since he was and is intimately concerned with the probable reaction in the market, his judgment manifested prior to the controversy is highly persuasive. His denial that his conduct was likely to

achieve the result intended by him would ordinarily carry little weight."

4. "It has been well said that the most successful form of copying is to employ enough points of similarity to confuse the public with enough points of difference to confuse the courts." Baker v. Master Printers Union, (D.C.N.J.) 34 F.Supp. 808, 811.

5. This section was quoted and applied in American Distilling Co. v. Bellows & Co., 102 Cal.App.2d 8, 21, 226 P.2d 751, 759.

Product advertising is on billboards, in newspapers, and nowadays, on television screens. The customer gets a visual impression. If the customer has been used to watching billboards, newspaper advertisements or television screens on which has appeared "Copa Tan" and then sees in the drug store a product bearing the name "Coca Tan" he acts upon these general impressions of the product he had in mind as a result of the advertising.[6]

This court noted the same thing in Stork Restaurant v. Sahati, 9 Cir., 166 F.2d 348, 359, where it quoted from a case there cited the following statement: " 'The law is not made for the protection of experts, but for the public —that vast multitude which includes the ignorant, the unthinking and the credulous, who, in making purchases, do not stop to analyze, but are governed by appearance and general impressions.' "

The purchaser who walks into a store carries with him only his general impressions or memory of the earlier name. He cannot make the minute comparisons which the court has undertaken here. We should note the points of similarity which are very obvious here rather than "the less important points of specific difference."[7]

Some of the differences mentioned by the court, are, I think, not really significant here. Thus it is stated that the injunction referred to certain words "Copatan", and "Copatint", and "Copâcream", and that: "The alleged infringement is composed of a pair of *two-word* phrases: Coca Tan; Coca Tint". The opinion says this makes a difference.

In the first place there is no basis in fact for this alleged difference. As the trial court's findings show, (finding 3), plaintiff became the owner of "Copa Tan", "Copa Tint", and "Copa Cream". That is a correct statement, for the record shows, (Exhibit 1) that Kreis sold to Plough certain registrations described as "Copa Tint" with the description of state registrations in California, Florida and New York. And as the findings show, the trial judge was undertaking to ascertain whether the names "Coca Tan" and "Coca Tint" were confusingly similar to "Copa Tan", "Copa Tint", and "Copa Cream", which he found in the negative, (finding 5). This was and is the issue. It cannot be affected by the fact that the decree after first referring to the names as "Copa Tan", "Copa Tint", and "Copa Cream", subsequently writes the same words as "Copatan", "Copatint" and "Copacream".

Even if there were facts to support the point sought to be made, I cannot believe that if a plaintiff has a trade name written as a single word, the would-be infringer can avoid a charge of confusing similarity by breaking the two syllable word into two words. I think there is no authority for that. To show that merely dividing a name having

---

6. Callmann analyzes the multitude of cases upon this point and summarizes the results as follows, (The Law of Unfair Competition and Trademarks, supra, pp. 1379 to 1383): "Then too, marks are not to be considered vis-a-vis; the buyer viewing the mark of the defendant must rely upon his memory of the plaintiff's mark. * * * It must also be aware of the fact that a defendant normally does not slavishly copy the plaintiff's mark, but makes certain 'colorable changes' which are 'variations not distinctions'; and the court should, therefore, consider the points of general similarity rather than the less important points of specific difference. * * * 'The law is not made for the protection of experts, but for the public—that vast multitude, which includes the ignorant, the unthinking, and the credulous, who, in making purchases, do not stop to analyze, but are governed by appearances and general impressions.' The general impression of the ordinary purchaser, buying under the normally prevalent conditions in the trade and giving the attention such purchasers usually give in buying that class of goods, is the touchstone."

7. It appears to me that the court here has wholly disregarded the suggestions made by Mr. Callmann, (pp. 1381, 1982) which are based upon his summary of a multitude of cases having to do with the problem of confusing similarity, and which are quoted above, footnote 6.

confusing similarity into two words cannot possibly aid a defendant, let us assume that the owners of "Holeproof" could object to "Holefree", that "Mainliner" could object to "Mainflyer", that "Graybar" could object to "Graybear" and that "Syntopicon" could object to "Synopticon". Defendants in such cases could hardly escape injunctions by calling their products "Hole Free", or "Main Flyer", or "Gray Bear", or "Syn Opticon".

Some emphasis is sought to be placed upon dissimilarity of packaging. I cannot find anything in the record to prove this. In the record are defendants' "Exhibit II", defendants' package of Coca Tint, "LL", defendants' package of Coca Tan, and "MM", plaintiff's package of Coppertone. The opinion purports to compare the packaging shown in the exhibits. But even if difference in packaging were material or relevant here, such a comparison cannot be made. This is not a case involving infringement of Coppertone and there is no occasion for comparing the Coca Tan and Coca Tint packages with the Coppertone package or ·an.

It is plain that it was the defendants' intention to try to reach those customers who knew about Copa Tan and Copa Tint by offering them Coca Tan and Coca Tint. If comparisons of packaging were material at all, that is the kind of comparison that would have to be made but it cannot be made here. There are none of the old Copa packages in evidence. However, the packaging is irrelevant. This is not a suit in which plaintiff is trying to procure an injunction over the resistance of the defendant which would contain the provisions of the consent decree. In such a case it might be appropriate for a defendant to argue than an injunction ought not to be issued because through packaging or otherwise he had overcome the natural consequences of similarity in names.

But here we start with a decree which unequivocally and in plain terms prohibits manufacturing or selling suntan or sunburn products bearing "any other name or names confusingly similar." This prohibition is against *any* product bearing such confusingly similar names. In my view that is all there is to it; and the packaging is irrelevant even if the packaging had been proven.

It is said that there is a difference in sound. I think that such minor potential differences in the pronunciation of these names do not avoid the consequences of confusing similarity. As said in G. D. Searle & Co. v. Chas. Pfizer & Co., 7 Cir., 265 F.2d 385, 387, "Slight differences in the sound of similar trademarks will not protect the infringer." In that case the plaintiff's product had the trade name "Dramamine". Defendant undertook to market a competing product called "Bonamine". It appeared that the defendant had requested some of its employees to suggest names for its new product and 158 names were suggested. The name picked, "Bonamine", was the one word in the whole list which was most like "Dramamine".[8] The trial court found that the words Dramamine and Bonamine were unlike, referring to their pronunciation. The court of appeals reversed on the ground previously stated in the above quotation from the decision. The court also noted that although one name began with a "D" and the other with a "B", the two words were "voiced plosives" and were accoustically similar. That is the exact situation in respect to the "p" in "Copa" and the "c" in "Coca" with which we are dealing here.

In the case just referred to the court cited with approval the case of Lambert

8. The court there perceived what the defendant was up to and trying to accomplish. It quoted from Q-Tips, Inc. v. Johnson & Johnson, 3 Cir., 206 F.2d 144, 147, the following: "The evidence shows a list of dozens of names suggested by various employees, many of which are arbitrary, fanciful and completely unlike anything suggested by the plaintiff's product. But in the end defendant's top management came up with the name under discussion, 'Cotton Tips.' It is quite clear why, with all the possibilities open to it, defendant made this choice."

Pharmacal v. Bolton Chemical Corporation, 219 F. 325, 326, a decision by Judge Learned Hand. There the plaintiff's trade name was "Listerine" and the defendant's competing product was sold under the name of "Listogen". Judge Hand, speaking of the defendant's choice of name, said: "In choosing an arbitrary trade-name, there was no reason whatever why they should have selected one which bore so much resemblance to the plaintiff's; and in such cases any possible doubt of the likelihood of damage should be resolved in favor of the plaintiff. Of course, the burden of proof always rests upon the moving party, but having shown the adoption of a similar trade name, arbitrary in character, I cannot see why speculation as to the chance that it will cause confusion should be at the expense of the man first in the field. He has the right to insist that others in making up their arbitrary names should so certainly keep away from his customers as to raise no question. * * * To show how near the defendant's name is, we need only change one letter, 'g' to 'r'; 'Listoren' would be so close an imitation as would not allow argument in its defense. Now the 'g' does make a difference; being a consonant it sounds more distinctly, but I cannot say that it is enough, and no reasonable explanation, no explanation whatever, is suggested why the name need be used."

In Java Coffee Co. v. Jos. Martinson & Co., D.C., 142 F.Supp. 423, Judge Dimock held that the use by one party of the name "Javar Instant Coffee" for his coffee was so similar to the other party's "Martinson's Jomar" coffee that confusion was likely to result. There again the pronunciations were different but the confusion was real.

In my opinion the decision in this case cannot be justified by any consideration of variations in pronunciations, I do not believe that one purchaser in 500 would even see or notice the line over the "o"; even if he did, it would mean nothing to him for likely as not when he has read the billboard advertisement of Copa Tan, etc., he decides that also is pronounced with a long "o". As Mr. Callmann remarks: "* * * there is no such thing as a correct pronunciation of a trade-mark. It is pronounced in different ways by different people."[9]

The opinion states that, "No secondary meaning was alleged, claimed or proved as to Copatint or Copatan." This is wholly beside the point here. As previously suggested, if this were a contested case in which the plaintiff was trying to procure an injunction which was resisted by the defendant, the question of whether plaintiff could claim an exclusive right to a certain name might involve a consideration of whether that name was one which must have acquired a secondary meaning. But such is not the situation here. The consent decree has settled as between these parties the defendants' lack of right to these names and the plaintiff's right to an injunction against defendants' use of those names or any other names confusingly similar thereto.[10] Furthermore, the words "Co-

9. Pocono Rubber Cloth Co. v. J. A. Livingston, Inc., 3 Cir., 79 F.2d 446, 448: "The defendant suggests that its trademark should be pronounced 'Swavel,' with the accent on the first syllable, giving the 'a' a long sound to distinguish it from the plaintiff's trade-mark 'Suavelle,' which has the accent on the second syllable. The selection of the word 'Swavel' by the defendant following so closely upon the selection of the word 'Suavelle' by the plaintiff would hardly seem a mere coincidence. A fair interpretation of the evidence rather indicates that the word was chosen by design. It is absolutely impossible for the defendant to control the pronunciation which the trade would give to the word. It is apparent that the word so nearly resembles in sound, appearance, and spelling the plaintiff's trade-mark that it will necessarily cause confusion or mistake in the public mind and will deceive purchasers who will think they are buying merchandise produced by the plaintiff, when as a fact they are purchasing defendant's merchandise."

10. For this same reason the suggestion that appellant had not previously used the "Copa" names is irrelevant here. That circumstance is irrelevant here for

pa Tint" and "Copa Tan", whether written together or as two words, are completely fanciful. Such a fanciful trade name is generally recognized to be a "strong" name and entitled to an especially great degree of protection. Stork Restaurant v. Sahati, supra, 166 F.2d at p. 355.

Although conceding that the question here is merely whether "there was a likelihood of such confusion existing", yet the opinion suggests that there should have been some proof made of specific instances of actual confusion. That such proof of specific instances of confusion is wholly unnecessary in cases involving the question of confusing similarity has long been settled.[11]

We come then to the ultimate question here—are the names "Coca Tan" and "Coca Tint" confusingly similar to the names purchased and acquired by the plaintiff through the payment of the $20,750? Is there likelihood of confusion?

Under the parties' contract, (Exhibit 1), defendants sold to plaintiff its registration and rights in these names "together with the good will in connection therewith". Wholly apart from the calculated effort to come as close as could be possible to these old names with the names Coca Tan, Coca Tint, etc., it seems to me that the conclusion is unavoidable

that there must be likelihood of confusion. The cases are legion in which names differing more than those involved here have nevertheless been held to present confusing similarity. Of course, no two cases are exactly alike; but as I read the adjudicated cases dealing with confusion arising solely from the use of similar words, I cannot reconcile the result here with the general trend of decisions in this field.[12]

Finally, it seems clear to me that the majority opinion mistakes the issue posed by the appellant's petition for an order to show cause. This is apparent from the statement of the opinion that by filing this proceeding appellant is attempting "to prevent the marketing in the competitive market of any product marked so that it might remind one of Coppertone." This is most certainly not the case. The matter now at issue has nothing whatever to do with "Coppertone". It has to do only with that portion of the decree which reads: "That defendants * * * are perpetually restrained from: (a) Manufacturing, distributing, selling or offering for sale any suntan or sunburn product bearing any one of the names Copatan, Copatint or Copacream as a trademark or trade name, or any other name or names confusingly similar thereto. * * * "

I would reverse the district court's decision.

another reason. The purchase contract is dated November 11, 1959. The consent decree was signed the next day. The injunction was stayed until July 1, 1961, to permit defendants to dispose of their stock on hand bearing the "copa" marks. During that interval defendants were using the names, in effect, as licensees of the plaintiff. Five months later, on December 4, 1961, this matter came on for hearing in the court below. Non-use by plaintiff during that five month period would not effect an abandonment of the plaintiff's rights. See Saxlehner v. Eisner & Mendelson Co., 179 U.S. 19, 31, 21 S.Ct. 7, 45 L.Ed. 60; National Lead Company v. Wolfe, 9 Cir., 223 F.2d 195, 205.

11. La Touraine Coffee Co. v. Lorraine Coffee Co., 2 Cir., 157 F.2d 115, 117;

Abramson v. Coro, Inc., 5 Cir., 240 F.2d 854, 857; S. S. Kresge Co. v. Champion Spark Plug Co., 6 Cir., 3 F.2d 415, 419; Queen Mfg. Co. v. Isaac Ginsberg & Bros., 8 Cir., 25 F.2d 284, 288; Audio Fidelity Inc. v. High Fidelity Recordings, Inc., 9 Cir., 283 F.2d 551, 557.

12. A convenient sample list of such cases is found in American Distilling Co. v. Bellows & Company, 102 Cal.App.2d 8, 23, 226 P.2d 751, 760. Included there are such cases as those involving Holeproof and No Hole, Hostetter's Bitters and Host Style Bitters, Gold Bar and Gold Band; Listerine and Lister Septine; Celluloid and Cellonite. Similar lists of adjudicated confusing similarity are furnished by Mr. Callmann at pages 1404 to 1416, inclusive.